JINA L. CHOI (N.Y. Bar No. 2699718)
TRACY L. DAVIS (Cal. Bar No.184129)
  Email: davist@sec.gov
AARON P. ARNZEN (Cal. Bar No. 218272)
  Email: arnzena@sec.gov
HEATHER E. MARLOW (Cal. Bar No. 215261)
  Email: marlowh@sec.gov

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 2800
San Francisco, California 94104
Telephone: (415) 705-2500
Facsimile: (415) 705-2501

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| JOSEPH A. NOEL | |
| Defendant. | |

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

**SUMMARY OF THE ACTION**

1. From approximately 2009 through 2011, Joseph A. Noel engaged in a manipulative "pump and dump" scheme to artificially inflate the price and volume of a San Francisco, California based penny stock company he controlled, YesDTC Holdings, Inc. ("YesDTC"), and to covertly sell YesDTC shares he held into the public market for a profit. Noel was the founder and Chief Executive Officer of YesDTC, which purports to be a direct-to-consumer marketing company specializing in internet and retail marketing programs and infomercials.

2. In or around the fall of 2009, Noel began laying the foundation for this scheme by taking YesDTC public through a reverse merger with a public shell company. Following the reverse merger, Noel covertly acquired approximately 40 million additional YesDTC shares in the name of a nominee company, so that he controlled approximately 65% of YesDTC's total outstanding shares.

3. Unbeknownst to investors, in January and July 2011, Noel artificially inflated YesDTC's stock price by writing, approving and disseminating false press releases that stated that YesDTC had certain exclusive distribution rights; that certain YesDTC products had government certifications and were profitable. None of this was true; yet in response to Noel's promotional campaigns, YesDTC's thinly traded stock rose in price, volume, or both. Noel sold millions of shares into the rise for a profit of over $300,000.

4. Noel carried out the scheme by using the nominee company to sell millions of YesDTC shares, without disclosing, as he was required to do, that he was the beneficial owner or seller of those shares or that he controlled the proceeds of those sales.

5. Noel also failed to register his YesDTC stock sales and failed to file the required notices with the Commission stating his beneficial ownership and intent to sell YesDTC shares. Noel thus violated and unless restrained and enjoined will continue to violate the antifraud, registration and other provisions of the federal securities laws.

## JURISDICTION AND VENUE

6. The Commission brings this action pursuant to Section 20(b) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77t(b)] and Section 21 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78u].

7. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(e) and 78aa]. Defendant, directly or indirectly, made use of the means and instrumentalities of interstate commerce or of the mails in connection with the acts, transactions, practices, and courses of business alleged in this complaint.

8. Venue is proper in the Northern District of California pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. At all

relevant times, Noel resided in this District. In addition, acts, practices, and courses of business that form the basis for the violations alleged in this complaint occurred in this District.

### INTRADISTRICT ASSIGMENT

9. Under Civil Local Rule 3-2, assignment to the San Francisco Division of this Court is proper because a substantial part of the events that gave rise to the claims alleged in this Compliant occurred in the County of San Francisco.

### DEFENDANT

10. **Joseph A. Noel**, age 53, resides in San Francisco, California. Noel founded YesDTC in or around December 2009. Noel served as its President and CEO from its inception until February 23, 2012, when he resigned. Also, from approximately 2009 through 2012, Noel worked as a penny stock promoter in or around San Francisco, California. From about 1992 to 2012, Noel worked in the securities industry, including at times as a licensed securities professional. During the Commission's investigation that preceded this action, Noel invoked his Fifth Amendment privilege, refusing to answer questions substantively during sworn testimony.

### RELEVANT ENTITIES

11. **YesDTC Holdings, Inc.**, is a Nevada corporation headquartered in San Francisco, California. YesDTC purports to specialize in direct-to-consumer marketing (e.g., infomercials). In December 2009, YesDTC became a public company by merging with PR Complete Holdings, Inc., a public "shell" corporation without meaningful assets or operations. YesDTC is a company required to file periodic reports with the Commission pursuant to Section 12(g) of the Exchange Act, but since about November 14, 2011, YesDTC has failed to file the required reports. YesDTC ceased business operations on or about February 23, 2012 and YesDTC directors and officers resigned their positions effective February 27, 2012. During the relevant time period, YesDTC traded at prices below $5.00 per share, was listed on OTC Link (operated by OTC Markets Group Inc.) and was a penny stock, under 17 C.F.R. § 240.3(a)(51)(A).

12. **Sonoma Winton, LLC**, is an entity founded by Noel in Nevada in December 2009. Sonoma Winton ceased doing business on or around March 23, 2012.

## FACTUAL ALLEGATIONS

### A. Noel Forms Sonoma and Takes YesDTC Public

13. Beginning in or about February 2009, Noel formed various corporate entities he later used to conduct his YesDTC pump and dump scheme. Noel used the entities to covertly acquire and sell millions of YesDTC shares into the public market at artificially inflated prices, concealing his true identity as the seller and beneficial owner of those shares.

14. First, in or about February 2009, Noel created Sonoma Winton, LLC ("Sonoma") and appointed his then 18-year old daughter as the sole member of Sonoma. Noel controlled all of Sonoma's operating functions; and his daughter, acting as the sole managing member of Sonoma, executed Noel's directives.

15. Next, in or about November 2009, Noel incorporated YesDTC, Inc. in Delaware. Finally, on or around December 11, 2009, YesDTC, Inc. entered into a reverse merger agreement with PR Complete Holdings, Inc., a Nevada corporation which had no meaningful assets or operations but which was technically "public" because it had registered with the Commission. On or about January 19, 2010, the merged company changed its name to YesDTC Holdings, Inc. As a result of an immediate stock split, approximately 94 million restricted YesDTC shares and approximately 44 million non-restricted YesDTC shares became outstanding. Noel kept approximately 40 million YesDTC shares for himself.

### B. Noel Conceals His Identity and Uses Sonoma as a Nominee to Acquire Approximatly 40 Million Additional YesDTC Shares

16. From approximately November 2009 through October 2011, Noel, through the Sonoma accounts, amassed approximately 40 million additional YesDTC shares in Sonoma's name for his benefit. Thus, from November 2009 through October 2011, Noel controlled, either personally or through Sonoma, approximately 90.4 million YesDTC shares, approximately 65% of YesDTC's total outstanding shares.

### C. Noel Dumps Large Amounts of YesDTC Stock During Two Pump and Dump Campaigns in 2011

17. During 2011, Noel conducted two distinct pump and dump promotional campaigns involving YesDTC stock. In each, Noel used Sonoma as a nominee to conceal his sales from the public and to profitably sell YesDTC shares by taking advantage of an increasing market price that had resulted from his promotional campaigns. Also in each, Noel prepared, had final review over, and issued on behalf of YesDTC, false and misleading press releases concerning the features, profitability, and distribution rights of the products YesDTC licensed and marketed. The press releases were distributed to online newswires.

18. In the first pump-and-dump campaign, beginning on or around January 20, 2011, Noel caused YesDTC to issue a press release stating that it was selected to serve as the exclusive distributor of the NutriFusion line of nutraceutical supplement products "for the worldwide consumer market." In fact, per the agreement between YesDTC and NutriFusion, YesDTC's distribution territory was limited to Asia only and was not worldwide. Trading volume in YesDTC shares increased approximately 100% over the prior day's volume on January 20, 2011, after the press release went out.

19. On or around January 28, 2011, YesDTC issued a press release announcing its introduction of an automobile engine conditioner called MotorBooster. The release stated that MotorBooster "has received Environmental Protection Agency ("EPA") certification to not cause engine damage." Contrary to the release, the EPA did not make any such certification. On January 28, 2011, the trading volume in YesDTC shares increased approximately 230% from the prior day and its high share price increased approximately 30% from the prior two trading days' high average.

20. On or about January 31, 2011, YesDTC issued a press release stating that YesDTC was launching the WordSmart language learning product, sponsored by celebrity game-show host Alex Trebek, into the Chinese market. In truth, YesDTC had no rights to sell or market the WordSmart product in China. On January 31, 2011, the trading volume in YesDTC shares increased approximately 650% from the prior day and its high share price jumped approximately 75% from the prior day high.

21. Between January and February 2011, Noel sold approximately 5.57 million shares from Sonoma's account – approximately 20% of Sonoma's YesDTC holdings – during the January 2011 pump and dump period.

22. In the months following this first promotional campaign, Noel continued to issue false press releases to create an appearance that YesDTC was profitable. For instance, on or around February 22, 2011 and February 24, 2011, YesDTC issued press releases stating that it "has reached an agreement with Mannings Drugs ("Mannings") in Hong Kong to distribute the NutriFusion nutraceutical supplement product in up to 300 stores throughout Hong Kong." This was not true. Mannings Hong Kong and Macau had not entered into an agreement with YesDTC Holdings, Inc.

23. In or around July 2011, Noel orchestrated a second, distinct pump and dump campaign wherein he wrote, and caused YesDTC to issue, several press releases touting falsely that the University of Alaska, Fairbanks (UAF) would be testing YesDTC's proprietary MotorBooster fuel additive tablet.

24. On or about July 15, 2011, Noel caused YesDTC to issue a press release stating that "UAF will commence a performance test of the Company's [YesDTC] proprietary MotorBooster tablet ..." and that YesDTC has "been in communication with UAF for a while over the promising results of the MotorBooster." Contrary to these statements, UAF had not spoken with Noel or persons at YesDTC and had not agreed to test, and did not test, MotorBooster. On or around July 15, 2011, the trading volume in YesDTC shares rose approximately 280% from the prior day, and its high share price increased approximately 2% over the prior day high.

25. On or about July 18, 2011, Noel caused YesDTC to issue another press release, again announcing tests of MotorBooster "being conducted by UAF." Like the earlier July 2011 press release, these statements were false. The trading volume in YesDTC shares on this day rose approximately 5000% from the prior day and its high share price increased approximately 110% over the prior day's high.

26. On or about the following day, July 19, 2011, Noel caused YesDTC to issue a third press release, again touting falsely that UAF would be testing MotorBooster and adding that Motorbooster "has received EPA Certification to not cause engine damage." The trading volume in

COMPLAINT 6

YesDTC shares remained approximately 2000% higher than the volume traded on or around July 14, 2011, before the three announcements were made. YesDTC's share price traded at approximately the same higher level achieved on or around July 18, 2011.

27. In total during the July 2011 pump and dump, Noel sold approximately 6 million YesDTC shares that were held in Sonoma's accounts, comprising approximately 25% of Sonoma's YesDTC holdings.

28. Each of the above-described false statements made in press releases on behalf of YesDTC by Noel was material. The false statements misrepresented YesDTC's profitability, its product line and its rights to distribute those products in certain geographic areas. As a result, there were substantial spikes in the market price, and the volume of trading, for YesDTC shares following the release of the false information to the market. Indeed, Noel was able to profitably sell YesDTC shares into the artificially inflated market reaping approximately $315,000 in net profits.

29. Noel also knew, or was reckless in not knowing, that each of the statements was false or misleading. Noel, as CEO, negotiated and signed YesDTC's product licensing and marketing agreements. In addition, Noel reviewed and had final say on all YesDTC press releases before they were distributed to the public.

**D. Noel Used Sonoma As A Nominee to Intentionally Conceal His Identity**

30. From approximately February 2009 through February 2012, Noel controlled Sonoma and used Sonoma to covertly acquire YesDTC stock for Noel's benefit, to open bank accounts, to pay YesDTC third-party stock promoters, to act as a cash supply to Noel and YesDTC, and to conceal Noel's true identity as he orchestrated sales of YesDTC shares into the public market through unregistered transactions at artificially inflated prices.

31. Noel's daughter acted on behalf of Sonoma with explicit direction from Noel. Noel directed his daughter to open Sonoma brokerage accounts, telling her when to do so and identifying the particular brokerage firm with which the accounts should be opened. Noel completed the brokerage account opening applications and broker requests for the Sonoma accounts in order to arrange for YesDTC shares to be deposited into Sonoma's brokerage accounts. In addition, Noel signed his daughter's name on multiple documents.

32. Additionally, Noel also determined when to sell YesDTC shares into the public market, and decided how many shares to sell. Noel initiated calls to Sonoma's broker repeatedly and facilitated and participated in conference calls between Sonoma's broker and his daughter on the days that Sonoma placed orders to sell YesDTC stock.

33. Despite controlling the sales of YesDTC shares through the Sonoma accounts, Noel disclaimed beneficial ownership of Sonoma's YesDTC shares, including in the 2010 YesDTC annual report filed on Form 10-K on or around April 15, 2011.

34. Noel knew, or was reckless in not knowing, that he was manipulating the securities market through his use of Sonoma as a nominee and his covert sales of YesDTC shares into the market to profit from artificially high prices.

**E. Noel Failed to Register His YesDTC Stock Sales and Failed to File the Required Notice of His Ownership Stake and Sales Transactions**

35. From approximately May 2010 through September 2011, Noel, using Sonoma as a nominee, sold approximately 15 million YesDTC shares to the public. Thus, in addition to the approximately 13 million YesDTC shares Noel sold during the January 2011 and July 2011 pump and dump periods, Noel sold approximately 2.4 million additional YesDTC shares in unregistered transactions from May 2010 through September 2011. Contrary to the requirements of the federal securities laws, Noel did not register these transactions with the Commission and no exemption from registration applied to those transactions.

36. From approximately May 2010 throughSeptember 2011 while Noel used Sonoma as a nominee to sell YesDTC stock, Noel was the CEO of YesDTC and was also the beneficial owner of, and controlled accounts that held, more than ten percent of YesDTC stock. Accordingly, Noel was required under Section 16 of the Exchange Act to report his ownership stake in YesDTC shares, as well as to report changes in his ownership or control, including his numerous sales of YesDTC shares. Noel's failure to register his sales of YesDTC stock, as well as his failure to file the requisite notices required by the Exchange Act, allowed Noel to further conceal from the market his true identity and his sales of YesDTC stock.

## FIRST CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

37. Paragraph numbers 1 through 36 are re-alleged and incorporated herein by reference.

38. By engaging in the conduct set forth above, Noel directly or indirectly, by use of means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national security exchange, with scienter: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, in connection with the purchase or sale of securities.

39. By reason of the foregoing, Noel directly or indirectly violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. §§ 240.10b-5] thereunder and unless restrained and enjoined will continue to violate these provisions.

## SECOND CLAIM FOR RELIEF

### Violations of Section 17(a) of the Securities Act

40. Paragraph numbers 1 through 36 are re-alleged and incorporated herein by reference.

41. By engaging in the conduct set forth above, Noel directly or indirectly, in the offer or sale of securities, by the use of means or instruments of transportation or communication in interstate commerce, or of the mails: (a) with scienter, employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of untrue statements of material fact or by omitting to state material facts necessary in order to make statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchasers of such securities.

42. By reason of the foregoing, Noel directly or indirectly violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], and unless restrained and enjoined will continue to violate this provision.

## THIRD CLAIM FOR RELIEF

### Violations of Sections 5(a) and 5(c) of the Securities Act

43. Paragraph numbers 1 through 36 are re-alleged and incorporated herein by reference.

44. By engaging in the conduct set forth above, Noel directly or indirectly, through use of the means or instruments of transportation or communication in interstate commerce or of the mails, offered to sell and sold securities issued by YesDTC.

45. No registration statement was filed with the Commission or was in effect with respect to the securities offered and sold by Noel prior to the offer or sale of these securities and no exemption from registration applied to those transactions.

46. By reason of the foregoing, Noel directly or indirectly violated Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)] and unless restrained and enjoined will continue to violate these provisions.

## FOURTH CLAIM FOR RELIEF

### Violations of Section 16(a) of the Exchange Act

47. Paragraph numbers 1 through 36 are re-alleged and incorporated herein by reference.

48. By engaging in the conduct set forth above, Noel failed to file initial and annual statements accurately reflecting his beneficial ownership of, and control over, YesDTC's stock; and statements accurately reflecting his changes in beneficial ownership of, and control over, YesDTC's stock. By reason of the foregoing, Noel violated and, unless restrained and enjoined, will continue to violate, Section 16(a) of the Exchange Act [15 U.S.C. § 78p(a)] and Rule 16a-3 thereunder [17 C.F.R. § 240.16a-3].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court:

I.

Permanently enjoin Defendant Noel from directly or indirectly violating Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)], and Sections 10(b) and 16(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78p(a)] and Rules 10b-5 and 16a-3 thereunder [17 C.F.R. §§ 240.10b-5 and 240.16a-3].

II.

Pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], prohibit Defendant Noel from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)];

III.

Prohibit Defendant Noel from engaging in any offering of a penny stock pursuant to Securities Act Section 20(g) [15 U.S.C. § 77t(g)] and Exchange Act Section 21(d)(6) [15 U.S.C. § 78u(d)(6)].

IV.

Enter an order requiring Defendant Noel to disgorge his ill-gotten gains according to proof, plus prejudgment interest thereon.

V.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

VI.

Grant such other and further relief as this Court may determine to be just, equitable, and necessary.

Respectfully submitted,

Dated: November 17, 2014

Heather E. Marlow, Esq.
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION